# IN THE UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT OF MICHIGAN

RAYMOND E. BUTLER, II,

       Plaintiff,

v.

Case No. 24-cv-00134

Hon. Paul L. Maloney

Magistrate Judge Maarten Vermaat

ELI JACKFINN EDDI a/k/a ELY EDDI, IIANA FINN EDDI, DORINE MAGENCE, MANUEL MAGENCE, JEFFREY K. GUTMAN, NACHSHON DRAIMAN, WILLIAM KANTER, JOEL S. ROTHMAN, MOSHE SOLOVEICHIK, ALAN GREEN, JERRY CHERNEY, SHMUEL FUERST, HAROLD KATZ, SAMUEL MASLATON, DANIEL BERGMAN, IRVING BIRNBAUM, ARON STANTON, CHAIM RAJCHENBACH, RIVKA RAJCHENBACH, AVRUM RAJCHENBACH,, MENACHEM SHABAT, AHUVA SHABAT, RONALD SHABAT, ERIC ROTHNER, COLMAN GINSPARG, JAMES MAINZER, MARSHALL K. BROWN, JEFFREY FINN, AARON COHEN, NANCY ROSEN, MARK ANTEBI, BARRY ANTEBI, DAVID R. RAANAN, and ELLIOT E. ANTEBI.

       Defendants.

_____

## PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT

*"The glory of justice and the majesty of law are created not just by the Constitution - nor by the courts - nor by the officers of the law - nor by the lawyers - but by the men and women who constitute our society - who are the protectors of the law as they are themselves protected by the law."*

    -  *Robert Kennedy, 1962*

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF THE CASE ...................................................................3

II.   JURISDICTION & VENUE ....................................................................4

III.   PARTIES ..................................................................................... 4

IV.   NON-PARTY AFFILIATED ENTITIES ....................................................... 11

V.   INVOLVEMENT OF EACH DEFENDANT IN THE RICO ENTERPRISE.. 12

VI.   STATEMENT OF FACTS ....................................................................23

VII.   CAUSES OF ACTION ......................................................................32

i.    "RICO" 18 U.S.C. §1961 et. seq...........................................................38

ii.   CONSPIRACY TO COMMIT RACKETEERING - 18 U.S.C. 1962 (d) ...... 40

iii.   FRAUD .................................................................................... 40

iv.   INNOCENT MISREPRESENTATION ......................................................42

v.    CONVERSION............................................................................43

vi.   FRAUDLENT CONCEALMENT ........................................................... 45

vii.   CONSIPRACY TO DEFRAUD .......................................................... 48

viii.   BREACH OF FIDUCIARY DUTY .......................................................50

ix.   CONSTRUCTIVE TRUST ................................................................52

x.    CLAIM & DELIVERY ................................................................... 55

xii.   DECLARATORY RELIEF ............................................................... 58

xiii.   NEGLIGENCE ......................................................................... 60

xiv.   CIVIL CONSPIRACY ................................................................... 61

xv.   TORTIOUS INTERFERENCE WITH INHERITANCE............................... 63

xvi.   CONSTRUCTIVE FRAUD..............................................................65

xvii.   BREACH OF CONTRACT .............................................................. 68

xviii.  EQUITABLE ESTOPPEL.................................................................70

xix.   MONEY HAD & RECEIVED...........................................................72

VIII.   REQUEST FOR RELEIF ............................................................... 74

IX.   VERIFICATION.......................................................................... 74

JURY DEMAND.................................................................................75

2

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

NOW COMES Plaintiff RAYMOND E. BUTLER, II, by and through his attorneys, THE MICHIGAN LAW FIRM, PC, and states as follows:

## I.    STATEMENT OF THE CASE

1. This action stems from the improper administration and fraudulent conversion of the assets of the GPN Family Trust, Doros Generation Trust and/or other related trusts and sub-trusts ("Trust Fund") for which Plaintiff is properly a beneficiary.  As set forth herein, the Defendants continue to conceal the trust assets through unlawful and varied means across the country.

2. Plaintiff asserts claims of RICO under 18 U.S.C. §1961 et. seq., Conspiracy to Commit Racketeering under 18 U.S.C. § 1962(d), as well as common law claims so triggered by Defendants' acts and omissions.

3. Trust Fund has been knowingly complicated through the formation of subsequent trusts, through the introduction of new trustees, and through various name changes and aliases, as well as other fraudulent activities that Defendants are responsible for.

4. The total value of the Trust Fund assets that Plaintiff Raymond E. Butler, II is entitled to is believed to be in excess of $100,000,000.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

## II.    JURISDICTION & VENUE

5.  Federal question jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 2201 and 2202 over Plaintiff's claims.

6.  This Honorable Court has jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

7.  Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims for acts that have occurred and/or continue to occur in this district or under 28 U.S.C. § 1391(b)(3), as there is no district in which an action may otherwise be brought, and each Defendant is subject to the personal jurisdiction of this Honorable Court.

## III.    PARTIES

8.  Plaintiff Raymond E. Butler, II ("Plaintiff") is the biological grandson of Jonas Neufeld.   Plaintiff is a resident of the State of Michigan, within the jurisdiction of the U.S. District Court for the Western District of Michigan, Northern Division.

9.  Defendant Ely Eddi a/k/a Ely Eddy a/k/a Ely Jackfinn Eddi, a/k/a Ely Eddie, a/k/a Eddi Ely a/k/a Eddi J. Ely a/k/a Eli Eddi f/k/a Ely "Issac"

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Eddi is a resident of the State of New Jersey.  Defendant Eli Eddi is the estranged husband of Co-Defendant Illana Eddi.  Upon information and belief, Defendant Ely Eddi has business and or residential ties to Florida, New Jersey, New York, and Illinois.

10. Defendant Ilana S. Eddi nee Finn a/k/a Ilana Finn a/k/a Ilana Eddi a/k/a Illana Eddi  a/k/a Ilana Susan Eddi a/k/a Ilana Susan Finn a/k/a Eddi Ilana a/k/a Ilana Susan Finn-Eddi is a resident of the State of Florida. Defendant Ilana Finn Eddi is the estranged wife of Co-Defendant Ely Eddi.

11. Defendant Dorine Magence a/k/a Forine Finn a/k/a Forine F. Finn a/k/a Dorine S. Magence a/k/a Dorine F. Magence is a resident of the State of Florida.

12. Defendant Manuel "Manny" Magence a/k/a Manual Y. Magence a/k/a Manual Yale Magence, a/k/a Mordecai "Morty" Magence a/k/a M.Y. Magence is a resident of the State of Florida.

13. Defendant Jeffrey K. Gutman is a resident of the State of Illinois. Defendant Gutman is the attorney of Co-Defendants Eli Eddi and Illana Eddi.  Defendant Gutman is licensed to practice law in the State of Illinois and is a member of Law Office of Gutman & Associates, located at 4018 N. Lincoln Avenue, Chicago, IL 60618. At all times relevant, Defendant Gutman has aided both the Finn and Rajchenbach families

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

in their Trust Fund scheme. Specifically, Defendant Gutman fraudulently obfuscated and unlawfully decanted the Jack Finn Irrevocable Trust in an attempt to hide the trail to the GPN Family Trust.

14. Defendant Nachshon Draiman a/k/a Nachshon Z. Draiman, a/k/a Nashshon N. Draiman is a resident of the State of Illinois.

15. Defendant William Kanter a/k/a Bill Kanter is a resident of the State of Illinois.

16. Defendant Joel S. Rothman is a resident of the State of Illinois.

17. Defendant Rabbi Moshe Soloveichik a/k/a Moshe H. Soloveichik a/k/a Moshe F. Solovechik a/k/a Moshe Soloveich is a resident of the State of Illinois.

18. Defendant Allen Green a/k/a Allan Green a/k/a Alan Green, upon information and belief, was a resident of the State of Illinois and has recently passed away.

19. Defendant Jerry Cherney is a resident of the State of Illinois.

20.    Defendant Rabbi Shmuel Fuerst a/k/a Samuel Fuerst is a resident of the State of Illinois. Defendant Fuerst is the head of Agudath Israel of Illinois and the Chicago Chesed Fund. The fund engaged in suspicious transactions, as Defendant Gutman has acknowledged in correspondence.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

21. Defendant Harold Katz is a resident of the State of Illinois.

22.     Defendant Samuel Maslaton a/k/a Sam Maslaton a/k/a Sammy Maslatom is a resident of the State of Florida.

23.     Defendant Daniel Bergman is a resident of the State of New Jersey.

24.     Defendant Irving N. Birnbaum a/k/a Erving Birnbaum is a resident of the State of Illinois.

25.     Defendant Aron Stanton a/k/a Stanton Aron a/k/a Aaron F. Stanton a/k/a Stanton F. Aron is a resident of the State of Illinois. Defendant Stanton aided Defendants Menachem Shabat and Chaim Rajchenbach in their money laundering scheme that funneled money from the GPN Family Trust.  Activities committed by Defendant Aaron Stanton related to the usurping of Plaintiff's assets include, but are not limited to a $1.5 million note on assigned by Defendants Chaim Rajchenbach and Defendant Menachem Shabat on or about September 1, 2011, which he reassigned to Jack Finn and Defendant Ilana Finn Eddi, without the approval of or benefit to the true beneficiary, Plaintiff Raymond E. Butler, II.

26.     Defendant Chaim Rajchenbach a/k/a Chaim Zvi Rajchenbach is a resident of the State of Illinois. Defendant Chaim Rajchenbach is the main operator of all the businesses and assets owned by the Trust Fund.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Defendant Chaim Rajchenbach directed and received laundered funds from the nursing homes owned by the Trust Fund.

27. Defendant Rivka Rajchenbach is a resident of the State of Illinois. Rivka is the wife of Defendant Chaim Rajchenbach and a trustee of the GPN Family Trust U/A/D 4/28/08. Defendant Rivka Rajchenbach participated in and received laundered funds from the nursing homes owned by the Trust Fund.

28.     Defendant Avrum Rajchenbach is a resident of the State of Illinois. Defendant Avrum Rajchenbach is the brother of Defendant Chaim Rajchenbach and trustee of GPN Family Trust U/A/D/ 4/28/08. Defendant Avrum Rajchenbach participated in and received laundered funds from the nursing homes owned by the Trust Fund.

29.     Defendant Menachem Shabat a/k/a Menachem M. Shabat a/k/a Manachem Shabat a/k/a Menachem Shabat is a resident of the State of Illinois. Defendant Menachem Shabat is the partner of Defendant Chaim Rajchenbach and is a trustee of the Doros Generation Trust. Defendant Menachem Shabat directed and received laundered funds from the nursing homes owned by the Trust Fund.

30.     Defendant Ahuva Shabat is a resident of the State of Illinois. Defendant Ahuva Shabat is the wife of Defendant Menachem Shabat and is a trustee of the Doros Generation Trust U/A/D 1/3/12. Defendant

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Ahuva Shabat directed and received laundered funds from the nursing homes owned by the Trust Fund.

31. Defendant Ronald Shabat is a resident of the State of Illinois. Ronald is the father of Menachem Shabat and Jack Finn's former business partner. Ronald directed and received laundered funds from the nursing homes owned by the Trust Fund.

32.    Defendant Eric Rothner a/k/a Eric Rotner a/k/a Erik Rothner is a resident of the State of Michigan with his primary residence at in South Haven, MI, which is within the jurisdiction of the U.S. District Court for the Western District of Michigan. Defendant Rothner is also the resident agent of 269 Park Avenue LLC, a Michigan business entity. Defendant Rothner, through various trusts, owns Brickyard Bank, an Illinois bank that is used to launder funds in and out of the Trust Fund. Defendant Rothner also owns numerous nursing homes and healthcare management companies with financial ties to the Trust Fund. Defendant Rothner directed and orchestrated the fraudulent actions of the co-trustees of the Trust Fund and other Defendants and agents as a resident of and from the State of Michigan.

33.    Defendant Colman Ginsparg is a resident of the State of Illinois. Defendant Ginsparg was, upon information and belief, an Illinois licensed attorney until 2022. Defendant Ginsparg assisted Defendants

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Rothner and Jack Finn in the execution and amending of all the fraudulent Jack Finn Irrevocable Trusts used to withdraw money from the Trust Fund.

34.    Defendant James Michael Mainzer is a resident of the State of Illinois. Defendant Mainzer filed the yearly taxes for the Trust Fund and its assets. Defendant Mainzer aided in the organizational structure of the fraudulent Jack Finn Irrevocable Trust and/or other related trusts.

35.    Defendant Marshall K. Brown is a resident of the State of Illinois. Defendant Brown is an Illinois licensed attorney who practices in the area of "estate planning," "asset protection," and "structuring a variety of business transactions, particularly those with significant tax consequences." Defendant Brown is a shareholder in Robbins DiMonte, located at 180 N. La Salle Street, Suite 3300, Chicago, Illinois 60601. Defendant Brown filed the yearly taxes for the Trust Fund and its assets. Defendant Brown aided in the organizational structure of the fraudulent Jack Finn Irrevocable Trust(s).

36.    Defendant Jeffrey Finn a/k/a Jeffrey Alan Finn a/k/a Yosi Finn is a resident of the State of California. Defendant Jeffrey Finn is the cousin of Defendant Illana Finn and the nephew of Jack Finn. Defendant Jeffrey Finn is a licensed attorney in California. Defendant Jeffrey Finn was paid by Jack Finn to investigate the misappropriations enacted by

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

the co-trustees but instead helped enable the co-trustees in their cover up. Defendant Jeffrey Finn reported information to Defendant Eric Rothner on behalf of Defendants Illana and Eli Jackfinn Eddi; this information resulted in Jack Finn being sent to an nursing home.

37. Defendant Meir "Aaron" Cohen is a resident of the State of New York.

38.     Defendant Nancy Rosen is a resident of the State of Illinois.

39.     Defendant Mark Antebi a/k/a Mordehai Antebi a/k/a Morehai Antebi is a resident of the State of New York.

40.     Defendant Barry Antebi is a resident of the State of New York.

41. Defendant Elliot E. Antebi is a resident of the State of New York.

42.      Defendant David R. Raanan is a resident of the State of New Jersey.

## IV.   NON-PARTY AFFILIATED ENTITIES

43.     The GPN Family Trust and the Doros Generation Trust, care of, as corporate trustee, CIBC Bank USA, formerly known as The PrivateBank and Trust Company (d/b/a The PrivateBank), a subsidiary of PrivateBancorp Inc. CIBC Bank USA is located at 120 S La Salle Street, Chicago, IL 60603.

44.     Jonas Neufeld was the biological grandfather of Plaintiff Raymond E. Butler, II, and is deceased.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

45.      Jacob Finn a/k/a Jack Finn was charged by Plaintiff Raymond E.

Butler, II's grandfather, Jonas Neufeld, with being the trustee of the

Trust Fund wherein Plaintiff Raymond E. Butler, II was a beneficiary.

Jack Finn is deceased.

46.      Pessa "Pessie" Finn is the is the ex-wife of Jacob Finn a/k/a Jack

Finn, the stepmother of Defendant Illana Finn Eddi, and the foster

mother of Plaintiff Raymond E. Butler, II.

47. Robin Sue Neufeld is the biological mother of Plaintiff.

48.      Raymond E. Butler is the biological father of Plaintiff.

49.      Silver A. Finn f/k/a Shoshana B. Finn and Silver A. Butler, born

in 1988, was the biological daughter of Robin Sue Neufeld and

Raymond E. Butler and is Plaintiff's sister.  Silver A. Finn passed away

in May 2023.

50.      Hannah S. Finn f/k/a Chana I. Finn and Helen "Hannah" Butler,

born in 1992, is the biological daughter of Robin Sue Neufeld and

Raymond E. Butler and is Plaintiff's sister.

## V.   INVOLVEMENT OF EACH DEFENDANT IN THE RICO ENTERPRISE

51. Defendant Ely Eddi was, at all times relevant, and is believed to still be

a trustee of the Trust Fund.  Defendant Ely Eddi has created numerous

different companies to launder trust funds under the guise of legitimate

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

investments with multiple other Defendants. Such activity remains ongoing.

52.     Defendant Ely Eddi legally changed his name to Ely JackFinn Eddi in the early 2000s, and Plaintiff asserts this was done so that he could continue to access, accept, control, or otherwise improperly divert proceeds for or from the Jack Finn Irrevocable Trust and/or the GPN Family Trust and/or the Doros Generation Trust.

53.     Defendant Illana Finn Eddi was, at all times relevant, and is believed to still be a trustee of the Trust Fund.  She is listed as a beneficiary and trustee of multiple subsequent fraudulent trusts, created with or to divert the funds and assets from the original Trust Fund through improper means. Defendant Illana Finn Eddi siphons funds from related sub-trusts; these funds are supposed to be dispersed to Plaintiff's sisters.

54.     Upon information and belief Defendant Illana Finn Eddi purchased a property in Boca Raton, Florida, in August 2011 for approximately $1.2 million, which was funded by improperly diverted Trust Fund assets.

55.     Defendant Dorene Magence is the ex-wife of Jack Finn, the current wife of Manuel Magence, and Ilana Finn Eddi's mother.  She

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

was receiving funds from a subsequent trust of the Trust Fund, which was intended for Plaintiff and his sisters.

56.     Defendant Jeffrey K. Gutman is the attorney of Co-Defendants Eli Eddi and Illana Eddi.  Defendant Gutman is licensed to practice law in the State of Illinois and is associated with the Law Office of Gutman & Associates, located at 4018 N. Lincoln Avenue, Chicago, IL 60618. Defendant Gutman represented Jack Finn in his divorce from Pessa Finn from approximately 2008-2009.  This Defendant has further represented Ilana Finn Eddi and Ely Eddi in multiple transactions involving the sale of Trust Fund assets, including, but not limited to life insurance policies, as a method of improperly benefiting from the Trust Fund assets. Defendant Gutman executed a quitclaim deed for 7141 N Kadzie Ave, Chicago, IL which was improperly expending Trust Fund assets without consulting the true beneficiaries.

57. Defendant Gutman continues to fraudulently conceal all related Trust Fund assets, and in a February 17, 2022 letter indicated that the Trust Fund was "never funded" which is untrue.

58.     Defendant Nachshon Draiman was Plaintiff's foster parent prior to the Finns.  This Defendant held ownership of Lake Cook Terrace prior to Jack Finn.  Further, this Defendant was also a Trustee of

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

multiple trusts used to divert Trust Fund assets improperly from Plaintiff and his sisters.

59.     Defendant William Kanter created a Jack Finn Irrevocable Trust in 1993 and was a trustee of the trust and subsequent trusts, which diverted Trust Fund assets improperly from Plaintiff and his sisters. Defendant Kanter was involved in assets being improperly decanted as well as the estate planning for Jack Finn over the course of over 20 years. Defendant Kanter sold real property from the Trust Fund without the consent of the beneficiaries.

60.     Defendant Joel Rothman obtained and produced a 1994 Self Declaration of Trust for Jack Finn.

61. Defendant Moshe Soloveichik was a Trustee of the Jack Finn Irrevocable Trust, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.

62.     Defendant Alan Green was an accountant for Jack Finn, as well as a trustee and/or involved with various trusts stemming Trust Fund, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.  Defendant Green also profited from the various nursing home investments, and he has since passed away.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

63.     Defendant Dorene Magence was a Trustee of Trust Fund, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.

64.     Defendant Jerry Cherney was a Trustee of the Jack Finn Irrevocable Trust, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.

65.     Defendant Shmuel Fuerst is one of the Rabbis involved with Plaintiff's foster parent placements and trustee appointments, as well as receiving Trust Fund assets for an improper transaction involving money laundering of the Trust Fund assets for the purposes of charitable tax write-offs. Defendant Fuerst is the head of Agudath Israel of Illinois and the Chicago Chesed Fund. Through these funds, Defendant Fuerst engaged and continues to engage in money laundering. Defendant Fuerst was the former Rabbi of the Beit Din (the Rabbinical Court) and he used his position of power to conceal fraudulent activity and to improperly exert power and influence over witnesses/individuals involved in this fraudulent scheme.

66.     Defendant Harold Katz is an accountant that worked on the Trust Fund taxes and also was a Trustee of the Jack Finn Irrevocable Trust, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

67.    Defendant Samuel Maslaton is a friend of Illana Finn Eddi, who was hired to and tasked with guarding Jack Finn, within multiple nursing homes and his own home to keep him distanced from anyone other than Ilana Finn Eddi.  This Defendant also contacted the Plaintiff regarding Trust Fund assets, and disposition, while blaming other Defendants for fraud.

68.    Defendant Daniel Bergman is Ely Eddi's business partner, owns significant portions of companies used to launder Trust Fund assets, and purchased life insurance policies from subordinate trusts without the consent or knowledge of Plaintiff or his sisters – the beneficiaries.

69.    Defendant Irving Birnbaum is an insurance agent who sold Jack Finn multiple life insurance policies, and was a Trustee of the Jack Finn Irrevocable Trust, of which Trust Fund assets were improperly diverted from Plaintiff and his sisters.

70.    Defendant Stanton Aron was a general partner of Jack Finn in Lake Cook Terrace Nursing Center as well as other nursing homes funded by Trust Fund assets.  This Defendant also purchased shares of Sheridan Healthcare Associates, which was owned by the Trust Fund, from Jack Finn and Trustee Ilana Finn Eddi.  Defendant Stanton aided Defendant Menachem Shabat and Defendant Chaim Rajchenbach in

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

their money laundering scheme that funneled money from the GPN Family Trust.

71. Defendant Chaim Rajchenbach is the son of Jack Finn's former business partner, Jack L. Rajchenbach, and this Defendant purchased Lake Cook Terrace (n/k/a The Grove at The Lake), as well as other nursing homes from the Trust Fund. Defendant Chaim Rajchenbach is the main operator of all the businesses and assets owned by the Trust Fund. Defendant Chaim Rajchenbach directed and received laundered funds from the nursing homes owned by the Trust Fund.

72. Defendant Chaim Rajchenbach built a grand portfolio of nursing homes, totaling 300 facilities to date,[1] by using funds from the GPN Family Trust. He used these funds to purchase real estate and fund the businesses, while paying all the profits of these entities to his family trusts. This can be demonstrated by financial reports with fraudulent representations of Rajchenbach and Shabat family members being the beneficiaries of the GPN Family Trust and Doros Generation Trust.

73. Profits from the assets owned and funded by the GPN Family Trust and Doros Generation Trust pay out to individuals in the Rajchenbach and

---

[1] https://jewishportland.org/jewishreview/jr-stories/cedar-sinai-sells-facilities, last accessed September 20, 2024

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Shabat families and/or their family trusts as a form of money laundering.[2]

74. Defendant Menachem Shabat, is the son of Jack Finn's former business partner, Ronald N. Shabat, and along with his partner Defendant Chaim Rajchenbach, who owns and/or did own The Grove At the Lake. Defendant Menachem Shabat is a trustee of the Doros Generation Trust. Defendant Menachem directed and received laundered funds from the nursing homes owned by the Trust Fund. Defendant Menachem Shabat continues to purchase and fund nursing home acquisitions with the Doros Generation Trust assets and distributes the profits of these enterprises to his family, himself, and other family trusts.

75. Defendants Rika and Avrum Rajchenbach as trustees of the GPN Family Trust U/A/D 04/28/08 have been involved in a number of very suspicious real estate and mortgage transactions involving Brickyard Bank, relating to funds usurped from Plaintiff.

76.    Defendant Eric Rothner negotiated the sale of Trust Fund assets on behalf of Jack Finn to Defendant Rajchenbach and Defendant

---

[2] See e.g.
https://hfs.illinois.gov/content/dam/soi/en/web/hfs/medicalproviders/cost reports/2022ltccostreports/avantara_long_grove_2022_0052639.pdf, last accessed September 20, 2024, page no. 21.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Shabat.  This Defendant also borrowed $1,000,000 of Trust Fund assets without the consent or knowledge of Plaintiff or his sisters – the beneficiaries.  Defendant Rothner, through various trusts, owns Brickyard Bank, an Illinois bank that is used to launder funds in and out of the Trust Fund. Defendant Rothner also owns numerous nursing homes and healthcare management companies with financial ties to the Trust Fund. Defendant Rothner directed and orchestrated the fraudulent actions of the co-trustees of the Trust Fund while residing in the State of Michigan.

77. Recently a Northview Village, a nursing home in St. Louis, Missouri, owned in part by Defendant Eric Rothner, suddenly and abruptly shut down[3] without warning to residents or workers, with CMS levying a substantial fine.[4]

78. On October 26, 2010, Jack Finn assigned the $1,000,000 note from Defendant Eric Rothner and his wife Gale Rothner, to Hannah Finn, Pessa Finn, and/or Ilana Eddi.

---

[3] https://www.stlpr.org/health-science-environment/2024-07-08/st-louis-northview-village-nursing-home-closure-penalities, last accessed August 4, 2024.  See also https://cu-citizenaccess.org/2023/12/champaign-residents-warned-the-county-about-a-nursing-home-operator-now-four-senior-facilities-are-closed/, last accessed August 4, 2024.
[4] https://www.stlpr.org/health-science-environment/2024-03-11/federal-officials-hit-closed-st-louis-nursing-home-with-56-000-fine, last accessed August 4, 2024

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

79.    Defendant Mark Antebi, who was not a beneficiary of the Trust Fund, in 2009, executed a promissory note and borrowed the sum of $1,000,000 from Jack Finn.

80.    Defendant Nachshon Draiman and Defendant William Kanter were indicated as co-trustees of a version of The Jack Finn Irrevocable Trust, which listed Plaintiff as a beneficiary, if adopted.

81. Defendant Barry Antebi a/k/a Barry Anebi a/k/a Barry Anteby, as discussed herein, assisted in money laundering and mismanagement of Trust Fund assets.

82.    Defendant Joel Rothman was involved in creating at least one trust in this enterprise used to divert Trust Fund assets from Plaintiff, and maintains records of same.

83.    Defendant Irving Binbaum facilitated life insurance policy transactions that were used to divert Trust Fund assets from Plaintiff.

84.     Defendant Colman Ginsparg was a trustee of Trust Fund and facilitated the process of amendments to Trust Fund structure.

85.    Defendant Marshall K. Brown, despite denying involvement in Defendants' diversion of Trust Fund assets, issued correspondence on his firm's letterhead discussing complicating the Trust Fund, changing elements of Trust Fund and various subsequently related trusts, and was involved in working with Defendant Nashshon Draiman, Jack Finn, and

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

Pessie Finn on the particulars of these trusts, which ultimately diverted assets from Plaintiff.

86.     Defendant Jeffrey Finn was involved in researching and compiling information regarding the obfuscation of the Trust Fund, and upon information and belief did not take any necessary actions that would be required of him as he allegedly discovered the questionable actions taken with respect to diverting Trust Fund assets from Plaintiff to or for the benefit of Defendants.

87. Defendant Aaron Cohen participated in and/or facilitated transactions with Jack Finn, involving Trust Fund assets, Ravid Realty Partners I LLC and Cohen Equities, and these transactions were made without the approval of or consent of Plaintiff, and they were conducted to Plaintiff's detriment.

88.     Defendant Nancy Rosen, at all times relevant, worked for Defendant Eric Rothner, and has discussed Trust Fund documentation and/or status with Plaintiff, providing information differing from other Defendants.

89.     Defendant Elliot Antebi is the cousin of Ely Eddi, and participated in investment and profiting from the Trust Fund assets at Plaintiff's expense.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

## VI.    STATEMENT OF FACTS
### Jonas Neufeld's Journey & Intentions to Provide for Plaintiff

90.    Jonas Neufeld was a very successful and wealthy Jewish businessman, originally from Poland.

91. Neufeld's wealth included significant family inheritance as well as accumulated assets through his own business and investing efforts.

92.    Records confirm that Neufeld survived multiple Nazi concentration camps during the Holocaust, including Auentode, Makstatt, Tarnowitz, Fünfteiche, Gross-Rosen and Dachau.

93.    Neufeld not only survived the Holocaust, but managed to immigrate to the United States after World War II and retain his wealth.

94.    Neufeld married Zorene Mizell in 1959, and they had one daughter in 1961, Robin Sue Neufeld.

95.    Robin Sue Neufeld married Raymond E. Butler, and they had a child - the Plaintiff Raymond E. Butler, II, who was born in 1986, as well as two daughters, Hannah and Silver.

96.    Plaintiff's biological parents suffered from substance abuse and domestic violence issues; as a result, were estranged from Jonas Neufeld.

97.    Jonas Neufeld disinherited Robin Sue Neufeld from any inheritance in the late 1980's.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

98.     When Plaintiff was a toddler, his grandfather, Jonas Neufeld because he was concerned about Plaintiff's safety, due in large part to the level of wealth he accumulated and the substance abuse issues demonstrated by Plaintiff's biological parents, wanted to protect and provide for Plaintiff's upbringing and future.

99.      Jonas Neufeld therefore turned to Jewish community leaders in Chicago, Illinois to help him take care of Plaintiff and his sisters.

100.     Jonas Neufeld spoke to a teacher at the Congregation of K.I.N.S. West Rogers Park, in Chicago, IL, a synagogue and a day school.

101.     From there, Jonas Neufeld was referred to Rabbi Hershel Shusterman and Rabbi Shmuel Fuerst.

102.     Upon information and belief, these Rabbis referred Neufeld to Jack Finn, who was a Jewish door-to-door salesman with no substantial assets.

103.     It was conveyed to Neufeld that Jack Finn was a very religious person of the Jewish faith, honoring Jewish customs and beliefs.

104.     As Jonas Neufeld wished for his grandchildren, Raymond, Silver, and Hannah to be raised in the Jewish faith, Neufeld entrusted Jack Finn with caring for Raymond, Silver, and Hannah.

105.     In doing so, Neufeld set up a Trust Fund for Jack Finn to manage on behalf of the aforementioned grandchildren, including the Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

106.    Jack Finn's compensation was as follows:

    a.  5% of the interest earned on the sizable Trust Fund; and

    b.  A yearly benefit of up to $5,000 for a trust for Jack Finn's daughter, Defendant Illana Eddi.

107.    Upon information and belief, Jonas Neufeld and Jack Finn created an irrevocable trust for the benefit of the aforementioned grandchildren of Neufeld, including the Plaintiff.

108.    Upon information and belief, trust assets that Jonas Neufeld entrusted to Jack Finn were transferred from the original trust fund to the "Jack Finn Irrevocable Trust."

109.    Plaintiff Raymond E. Butler, II is the beneficiary of the original trust fund and the "Jack Finn Irrevocable Trust" (collectively referred to as "Trust Fund.").

110.    At some point in the early 1990s, Jack Finn, along with Defendants, were keeping Plaintiff from communicating with and having contact with his grandparents, Jonas and Zorene Neufeld via sequestration efforts.

111. Also, around that time, Plaintiff, Silver, and Hannah were taken into the care of Jack and Pessie Finn.  Silver and Hannah were subsequently adopted by the Finns and their names were legally changed by the Finns.  However, Plaintiff, who was approximately only

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

10 at the time, and who was the eldest child and only male heir of

Jonas Neufeld, was not adopted by the Finns, but instead was put into

the State's foster care, contradictory to the directions Jonas Neufeld

provided.

### Jack Finn's Assurances & Sequestration

104.    Plaintiff had regular contact with Jack Finn and often drove him

to various appointments from 2010 through 2016.

105.    During these interactions Jack Finn repeatedly reassured

Plaintiff that he had been "taken care of" and that money would never

be an issue for him due to his beneficiary status of the Trust Fund.

106.    As Jack Finn moved into a Chicago, IL nursing home in

approximately 2016, Plaintiff continued driving for Jack Finn and

spending time with him, whereby he was often reassured regarding his

rights as beneficiary of the Trust Fund that his grandfather left for

him.

107.    In approximately 2018, Defendant Illana Eddi moved Jack Finn

to a nursing home in Florida but would not provide any contact

information to the Plaintiff, intentionally separating Plaintiff from

Jack Finn, in an attempt to prevent Plaintiff from learning more about

the status of the Trust Fund assets he was entitled to.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

108.    This another example of the sequestration and compartmentalization of information efforts employed by Defendants to divest Plaintiff of Trust Fund assets.

109.    Jack Finn died on May 5, 2022.

### Further Discrepancies Regarding The Trust Fund Assets

110.    Trust Fund disbursed the following to Plaintiff's sisters:

   a. $40,000 to Silver Finn in approximately 2010;

   b. Disbursement to buy a house provided to Hannah Finn in approximately 2011; and

   c. Regular disbursements to Silver Finn and Hannah Finn from approximately 2009-2018.

111. Despite these and other known Trust Fund disbursements as well as other proofs obtained recently by Plaintiff, Defendant Gutman authored a letter to Plaintiff's former counsel on February 17, 2022 stating that "the Trust was never funded."

112.    On or about July 24, 2017, a spreadsheet entitled J. Finn Trust and Estates was prepared by Jeffrey "Yossi" Finn ("Jeffery Finn"), Jack Finn's nephew. Jack Finn Estate Planning Notes.

113.    The spreadsheet included a summary of an investigation into Jack Finn's Trusts by Jeffrey Finn.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

114.     Jack Finn paid Jeffery Finn $5,000 to conduct this investigation and summarize his findings.

115.     According to records from Jeffrey Finn's investigation, Defendant Eric (Ricky) Rothner, Jack Finn, and Jeffery Finn had trouble reconciling the multiple irrevocable trusts from each other, based on information provided by Defendant Ilana Finn Eddi and Defendant Colman Ginsparg.

116.     Defendants intentionally misdirected Jack Finn and Jeffrey Finn with respect to the accurate accounting and details of the trusts.

### Fraudulent Release & Related Activities

112.     The first discovery of the injuries to Plaintiff occurred on or about February 18, 2022 when a Release was produced which bears the forged signature of Plaintiff. (**Exhibit 1 – 9/23/09 Fraudulent Release**).

113.     In September 2009, Plaintiff and Jack Finn met in Chicago, IL.

117.     At this meeting, Jack Finn told Plaintiff that Plaintiff was the beneficiary of Trust Fund, and that an early disbursement would be appropriate so Plaintiff could "make a living by starting a business."

118.      Jack Finn called for a meeting at the office of his lawyer, Defendant Jeffrey K. Gutman, on September 21, 2009, which occurred.

28

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

119.    During that meeting on September 21, 2009, Defendant Gutman said to Jack Finn, "well Jack, at least Illana will have an income for the rest of her life."

120.    During that meeting, wherein Pessie Finn, Hannah Finn, and Silver Finn were present, Defendant Gutman had multiple iterations of a disbursement form presented over a period of hours.

121.    Defendant Illana Eddi was on Defendant Gutman's speakerphone for a substantial portion of the meeting.

122.    Defendant Gutman asked Defendant Illana Eddi if she "wanted to live with her father, or live with her father."

123.    To that, Defendant Illana Eddie responded with, "Jeffrey, I just don't want to be sued for this later."

124.    The Release with the forged signature is dated September 23, 2009, was not notarized, bears no witness signatures, or other verifying authentication.

125.    This Release not only allegedly "forever discharges Jack Finn Irrevocable Trust, Illana Eddi individually and as Trustee, Ely Eddi individually and as Trustee, and Jack Finn for any and all claims demands, suits, actions, chose in actions whether in law, equity or probate which it now has or shall ever have against the foregoing arising out of any claim or interest in the Jack Finn Irrevocable Trust,

29

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

but it also releases and discharges "any claims that any funds are due or owing from Jack Finn, Illana Eddi, Ely Eddi or their successors or assigns.

126.    Plaintiff never signed this fraudulent release.

127.    Plaintiff was never advised, verbally or in writing, that he was releasing any rights to Trust Fund in exchange for the almost $30,000 he received in September 2009.

128.    Even more, Plaintiff's handwriting expert has already indicated that the September 23, 2009 document is forged.

129.    Upon information and belief, Defendant Gutman created the forged release document.

130.    Plaintiff never received the entire $30,000 promised by the fraudulent release, instead only received several cashier's checks and some cash from Jack Finn.

131.    An envelope with the letterhead bearing the name of "Gutman and Associates" with the address of 4018 N. Lincoln Avenue, Chicago, Illinois 60618 was obtained.

132.    The envelope had a handwritten note indicating releases signed by Plaintiff, his siblings, and Pessa Finn.  Each release, like the fraudulent release allegedly signed by Plaintiff indicated Plaintiff and his siblings gave up all of their interests in the Trust Fund.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

## Trust Fund Involvement In Other Entities & Investments

133.    In September 2011, The Grove at the Lake Realty, LLC, ( a
    Delaware LLC, transferred $1,500,000.00 to Sheridan Healthcare
    Associates, an Illinois limited partnership.

134.    Sheridan Healthcare Associates has been owned directly and/or
    indirectly by many of the Defendants to this action and trusts that
    Defendants' individually and/or jointly controlled through various
    means such as being Trustees and/or beneficiaries.

135.    The Grove at The Lake is and/or was owned in part by
    Defendant Chaim Rajchenbach and Defendant Menchem Shabbat,
    and was involved in diverting assets from Trust Fund..

136.    Defendants Nachshon Draiman and William Kanter were
    indicated as co-trustees of The Jack Finn Irrevocable Trust, which
    listed Plaintiff as a beneficiary.

137.    In 2011, the Trust Fund disbursed funds to Plaintiff's sister,
    Hannah Finn for her to purchase a home.

138.    On September 25, 2007, Defendant Gutman drafted a document
    entitled, "Statement by Grantor and Grantee," which was notarized by
    Defendant Gutman as well.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

139.     Land trusts from January 1, 1980 through the present in the
Cook County Recorder of Deeds office provides 44 results for land
trusts including the name, "Jack Finn."

140.     Plaintiff obtained a significant cache of relevant documents
outlining Jack Finn trust-related transactions from the Cook County
Recorder of Deeds.

141.     For example, on October 9, 2007, records indicate that Jack Finn
executed a quitclaim deed for 7141 N. Kedzie Avenue, Chicago, IL
60645.

142.     7141 N. Kedzie Avenue, Chicago, IL 60645 is the address for
condominiums known as the Winston Towers.

143.     The quitclaim deed for this property was notarized by Defendant
Gutman.

144.     Investigation into Pessa Finn's divorce from Jack Finn highlights
the needs for more research and tracing, relating to property and
transactions of Jack Finn and various trusts, as the recordkeeping was
intentionally obfuscated by Jack Finn and/or Defendants.

## VII.  <u>COLLATERAL LEGAL MATTERS</u>

*145.*     Plaintiff currently maintains litigation narrowly seeking an
accounting of the Trust Fund from three of the Defendants in this

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

matter, Illana Finn Eddi, Ely Eddy, and Jeffrey K. Gutman, in the

Circuit Court of Cook County, Illinois, bearing case number 2022 CH

675.  The action remains pending.

146.    *Digital Camera Intl., Ltd. v. Antebi*, No. 11 CV 1823 (SJ), 2017 WL

2992719 (E.D.N.Y. July 14, 2017), which is no longer pending, involved

claims of breach of fiduciary duty, conversion, fraud, constructive

trust, unjust enrichment, conversion, and accounting.  Digital Camera

International ("DCI") was owned by Defendant Ely Eddi, Defendant

Daniel Bergman, Defendant David Raanan, and Defendant Barry

Antebi.  DCI sued Defendant Barry Antebi in a striking lawsuit

spanning at least six years, which was summarized by the trial court

as follows:

> From the brazen fabrication of accounting numbers for "tax
> purposes" to the established practice of using corporate
> assets for everything from facilitating extra-marital affairs
> to helping interrelated companies show a profit on their
> books, this case suggests serious misconduct by the
> individuals at DCI. That neither party could establish either
> of their claims is a testament to how complicit each party
> was in the other's Wrongdoing, to say nothing of the
> boldness of each in bringing these accusations in open
> court despite the distinct air of illegality.

147.    In *DCI*, the trial court further found:

> Evidence showed that Mr. [Barry] Antebi was responsible
> for negotiating or re-negotiating the rent costs for DCI,

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

which, after his efforts, resulted in an $84,000 rent charge for space that should have costed less than $5,000.

Even more troublesome, Mr. [Barry] Antebi seems to insinuate that he knew that the inflated numbers were false and were entered so that Mr. Eddy could show a profit in DDD "for tax purposes." Yet Mr. Antebi did nothing about what probably amounts to tax fraud. Apparently, using the company as a community ATM was too good a thing to disturb. It was only in response to DCI's claims against Mr. Antebi that he complained of oppression. But in doing so, he admits his complicity.

*Digital Camera Intl., Ltd. v. Antebi*, No. 11 CV 1823 (SJ), 2017 WL 2992719, at *7 (E.D.N.Y. July 14, 2017)(cleaned up).

148.    Plaintiff asserts that the level of fraud and already found in the corporate management practices of Defendants is also present here, and that DCI and other corporations owned, operated, and/or managed by Defendants were funded entirely or in part by the misuse of Trust Fund assets. Moreover, the legal entities involved in these lawsuits and others relate to the Trust Fund assets as they improperly possessed Trust Fund assets to Plaintiff's detriment.

149.    Currently pending in the U.S. District Court for the Southern District for the Southern District of New York, under case number 1:24-cv-00520-JPC-RFT is an action between by Ely Eddi against Elliot Antebi, et. al., where Ely Eddi makes claims against Elliot Antebi for misrepresentation,

34

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

mismanagement, unfair treatment, tax and accounting fraud,

and breach of contract for loans and other indebtedness which

Ely Eddi allegedly tendered and/or collateralized.  (Document

43, Second Amended Complaint).

150.    In 24-cv-00520, among other specific allegations,

including a questionable Miami, FL commercial real estate deal,

and unauthorized cash withdrawal.  Ely Eddi also accuses Elliot

Antebi of improperly encumbering a New York City property

apparently owned and/or controlled by Elliot Antebi, with a

$12,000,000 high-interest, predatory loan in November 2019.

151.    In the U.S. District Court for the District of New Jersey,

under case number 2:24-cv-04012-BRM-CLW, is currently

pending a lawsuit where Digital Data Devices, Inc. ("DDD"), is

suing David Raanan for trespassing, breach of fiduciary duty,

theft, conversion, tortious interference, and unjust enrichment.

152.    In the DDD case, DDD, whose principal and sole

shareholder is Ely Eddi, claims Defendant Raanan had a salary

of $315,000, in addition to other compensation, such as a

personal vehicle.  Defendant Raanan trespassed after resigning

and took high-end luxury watches and Ely Eddi's computer,

which contains important DDD business information, and

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

forty-seven (47) LG soundbars.  (Document 5, First Amended Complaint.)

153.    Defendant Raanan's statements in the DDD case indicate as follows:

In or about November 2018, [Raanan] approached Mr. Eddi and asked for araise as he felt underpaid for the services he was providing to Plaintiff.

Mr. Eddi agreed to and did raise [Raanan]'s annual salary to $320,000.00 per annum. Payment of the increased salary was to be made by paying [Raanan] $10,000.00 per month in addition to his regular salary.

Mr. Eddi instructed [Raanan] to pull the additional $10,000 per month from the wires that he was sending to [Raanan]'s business account.

However, when these wires came in, Mr. Eddi would instruct [Raanan] to transfer that money to Mr. Eddi's creditors.

By doing so, Mr. Eddi feigned paying [Raanan] his negotiated salary.

In reality, after Mr. Eddi wired the purported $10,000 to [Raanan], [Raanan] was treated as a middleman between Mr. Eddi and parties to whom he owed money. Accordingly, [Raanan] never actualized his negotiated raise." (DDD case, Document 10).

154.    In 2012, Monster Cable * brought an action against Ely Eddi accusing him of working with a Monster employee to wrongfully obtain confidential information, which Eddi used for his fiscal benefit, by directly or indirectly promising "first class

36

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

airfare, hotel suites, various forms of entertainment prostitutes, and other valuable consideration… to Monster's detriment." This case was filed in the U.S. District Court for the Northern District of California, bearing case number 3:12-cv-00250-RS, and has since been dismissed after significant litigation regarding ADR.

155.    Defendant Nachshon Draiman was found liable for a $22.6 million Judgment in *Dynegy Mktg. and Trade v. Multiut Corp.*, 648 F.3d 506 (7th Cir. 2011) after he claimed that millions of dollars in invoices were not due and the interest should be waived, based on oral agreements outside of the applicable contractual documents.

156.    In Defendant Draiman's bankruptcy proceedings, an appointed examiner "found, *inter alia,* that [Draiman]'s books and records currently available were 'less than appropriate for the size and complexity of [Draiman]'s various businesses.' Further, the Examiner noted discrepancies between [Draiman]'s records and his bankruptcy schedules and statement of financial affairs.  The Examiner also discovered variances between [Draiman]'s 2008 income tax return and other information he reviewed." *In re Draiman*, 450 B.R. 777, 788 (Bankr. N.D. Ill. 2011).

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

157.     Plaintiff does not seek to produce an exhaustive list of all prior accusations of fraud and related claims that the Defendants to this litigation have been involved in, but provides the aforementioned case references to provide awareness of the type of long and questionable history of defending similar actions whereby allegations of fraud and related causes of action are made against and/or between many of these Defendants or corporations, trusts, and/or clients that they have involvement with.

158.     Plaintiff contends that Defendants misuse and/or conversion of Trust Fund assets were used to fund businesses, schemes, and other trusts to the detriment of Plaintiff and for the benefit of Defendants.

## VIII.  CAUSES OF ACTION

### i.  "RICO" 18 U.S.C. §1961 et. seq.

147.     Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

148.     Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3).

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

149.     Each Defendant violated 18 U.S.C. §1962(c) by the acts described

in the prior paragraphs, and further described below.

150.     Each Defendant participated in the operation of and/or

management of the enterprise through a pattern of racketeering activity.

151.     The enterprise has existed among the Defendants predominately

through their association-in-fact.

152.     The purpose of this enterprise was to withhold Trust Fund

assets from Plaintiff and use the funds to unlawfully enrich and/or benefit

each Defendant and/or others on behalf of the Defendants.

153.     The enterprise consisted of various relationships between the

Defendants as described herein, which consisted of numerous predicate

acts, including, but not limited to mail fraud, and wire fraud, money

laundering, embezzlement of funds, bank fraud, mortgage fraud, insurance

fraud, tax fraud, accounting fraud, and/or wire fraud.

154.     These predicate acts served the common purpose of withholding

Trust Fund assets and/or unlawfully enriching and/or otherwise benefiting

each Defendant and/or others on behalf of the Defendants.

155.     The enterprise has existed for a long enough period of time to

permit the Defendants to pursue the enterprise's purpose, as evidenced by

fraudulent practices as early as September 2009, where a fraudulent release

was created, and Plaintiff's signature forged in an effort to divest him of

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

assets he was entitled to from the Trust Fund, which was purportedly created in approximately 1990.

156.     To the extent that any of the Defendants did not personally send fraudulent communications or otherwise personally commit mail fraud and/or wire fraud, liability is established due to the fact that they were willful participants in the scheme and the use of mail fraud and/or wire fraud committed by other Defendants participating in the scheme, in furtherance of the scheme, were foreseeable.

### ii.  CONSPIRACY TO COMMIT RACKETEERING - 18 U.S.C. 1962 (d)

157.     Defendants objectively manifested an agreement to participate directly and/or indirectly in the enterprise's affairs through a pattern of racketeering activity.

158.     Defendants conspired to achieve the fraudulent objectives of the enterprise.

159.     Defendants are responsible for the acts of the other Defendants that further the agreed-upon scheme.

### iii.  FRAUD

160.     Defendants jointly, individually, and/or through their agents, have made material misrepresentations to Plaintiff regarding the Trust Fund.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

161.     These misrepresentations regarding the nature of Trust Fund assets, the beneficiary status of Plaintiff, and/or Defendants' attempts to obfuscate records in a way to usurp the assets and rights under law and trust that Plaintiff is entitled to were false and made in an effort to enrich Defendants or others and/or conceal the Defendants' collective and individual wrongdoing as set forth herein.

162.     Defendants made multiple false representations to Plaintiff regarding his entitlement to and the status of the Trust Fund.

163.     Defendants also made false representations to Plaintiff in a reckless nature, without knowledge of its truth.

164.     This was done in furtherance of Defendants' interest in usurping assets and rights that Plaintiff was entitled to.

165.     The actions of Defendants individually and/or collectively were made with the intent that the Plaintiff would act upon the misrepresentations.

166.     Plaintiff relied upon the aforementioned misrepresentations.

167.     Plaintiff was injured as a result of the Defendants collective and/or individual acts of fraud.

168.     Plaintiff was injured as a result of Defendants' fraudulent activities relating to Trust Fund.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

169.     Plaintiff's injures include, but are not limited the Trust Fund assets improperly diverted away from him by Defendants, the lost opportunity cost of the fraud and lack of access to Trust Fund assets he is entitled to, and other appreciable injuries as a result of Defendants' fraudulent activities.

### iv.  INNOCENT MISREPRESENTATION

170.     Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

171.     Defendants, individually and collectively, made representations to Plaintiff regarding the nature and status of the Trust Fund assets and Plaintiff's beneficiary status in various transactions made with Plaintiff.

172.     Defendants further represented that various disbursements and transfers made from the Trust Fund were properly executed and in compliance with the terms and intent of the Trust Fund.

173.     Defendants' representations were false.

174.     These representations were made by Defendants without knowledge of their falsity or with reckless disregard for their truth, believing them to be true at the time they were made.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

175.    Plaintiff, relying on these representations, believed that the Trust Fund was being administered properly and that he had no further claim or entitlement to its assets.

176.    The representations made by Defendants were material to Plaintiff's understanding of his rights and entitlements under the Trust Fund.

177.    Plaintiff suffered damages as a result of relying on these false representations, including but not limited to the loss of Trust Fund assets, emotional distress, and legal and investigative expenses incurred to uncover the true nature of the Trust Fund's administration.

178.    The damages suffered by Plaintiff were a direct and proximate result of the innocent misrepresentations made by Defendants regarding the Trust Fund and Plaintiff's beneficiary status.

### v.  CONVERSION

179.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

180.    Plaintiff is the rightful beneficiary of the Trust Fund, which includes substantial assets intended for his benefit.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

181.    Defendants, individually and collectively, wrongfully exercised dominion and control over the assets of the Trust Fund without Plaintiff's consent and in a manner inconsistent with Plaintiff's rights as a beneficiary.

182.    Specifically, Defendants converted Trust Fund assets through various fraudulent means, including but not limited to the creation of fraudulent releases, unauthorized disbursements, and transfers of Trust Fund assets to other trusts and entities controlled by Defendants.

183.    Defendants' actions in converting the Trust Fund assets were intentional and aimed at depriving Plaintiff of his rightful inheritance and benefits from the Trust Fund.

184.    Defendants exercised control over Trust Fund assets in a manner that denied Plaintiff's rights to use and enjoy same, to the benefit of Defendants' own use and beneficial enjoyment.

185.    Defendants' conversion of the Trust Fund assets included, but was not limited to, the following acts:

a. Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

44

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

    b.  Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

    c.  Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

186.    Plaintiff has demanded the return of the Trust Fund assets, yet Defendants' conversion remains ongoing.

187.    As a direct and proximate result of Defendants' wrongful conversion of Trust Fund assets, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address the Defendants' actions.

188.    Plaintiff is entitled to the return of the converted assets, or, in the alternative, to the value of the converted assets, along with any other damages incurred as a result of the conversion.

### vi. <u>FRAUDLENT CONCEALMENT</u>

189.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

190.    Defendants, individually and collectively, engaged in a scheme to fraudulently conceal material facts from Plaintiff regarding the administration and disposition of the Trust Fund assets.

191.    Defendants, many of whom are lawyers, accountants, trustees, other professionals, religious figures, and/or family or figures of authority in Plaintiff's life, had a duty to disclose to Plaintiff all material facts regarding the Trust Fund, including but not limited to, the existence of assets, their value(s), and any transactions affecting the Trust Fund.

192.    Defendants had superior knowledge regarding the ongoing activities related to the Trust Fund, as compared to the Plaintiff.

193.    Defendants knowingly and intentionally concealed and omitted material facts from Plaintiff with the intent to deceive him and prevent him from discovering the true nature of the Trust Fund's administration and the wrongful acts committed by Defendants.

194.    Specific acts of fraudulent concealment by Defendants include, but are not limited to:

    a.    Falsely representing that Plaintiff had signed a release on September 23, 2009, thereby discharging any claims against the Trust Fund and its trustees and acknowledging receipt of a

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

$30,000 disbursement, which Plaintiff never received and never signed.

b. Concealing the transfer of $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants.

c. Failing to disclose the assignment of a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi.

d. Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

e. Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

195.    Defendants' concealment of these material facts was intentional and designed to mislead Plaintiff and prevent him from asserting his rights as a beneficiary of the Trust Fund.

196.    Plaintiff reasonably relied on the Defendants' representations and lack of disclosure, believing that the Trust Fund was being administered properly and that he had no further claim or entitlement to its assets.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

197.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, lost opportunity cost, and additional expenses incurred to investigate and address the Defendants' actions.

198.     Defendants' fraudulent concealment was willful, malicious, and conducted with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

### vii. CONSPIRACY TO DEFRAUD

199.     Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

200.     Defendants, individually and collectively, entered into an agreement and conspired to defraud Plaintiff of his rightful inheritance and benefits from the Trust Fund.

201.     The purpose of the conspiracy was to unlawfully withhold, misappropriate, and/or convert the assets of the Trust Fund for the benefit of Defendants and others, and to deprive Plaintiff of his legal rights as a beneficiary.

202.     In furtherance of this conspiracy, Defendants committed numerous overt acts, including but not limited to:

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

a.  Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

b.  Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

c.  Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

d.  Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

e.  Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

f.  Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

203.    Defendants acted with the specific intent to defraud Plaintiff and to prevent him from discovering the true nature of the Trust Fund's administration and the wrongful acts committed by Defendants.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

204.    Defendants' conspiracy to defraud was willful, malicious, and conducted with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

205.    As a direct and proximate result of Defendants' conspiracy to defraud, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address the Defendants' actions.

206.    Plaintiff is entitled to relief for the harm caused by Defendants' conspiracy to defraud, including actual damages, punitive damages, reasonable attorney fees and costs, prejudgment interest, and any such other relief as deemed equitable and just.

### viii.  BREACH OF FIDUCIARY DUTY

207.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

208.    Defendants, particularly those in trustee positions of the Trust Fund, and those responsible for maintaining the organization of and intent of the Trust Fund and various subsequent trust funds and/or corporations had a fiduciary duty to act in the best interests of the Plaintiff as a beneficiary of the Trust Fund.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

209.    Defendants owed Plaintiff duties of loyalty, care, and full

disclosure, and were obligated to manage the Trust Fund assets

prudently and in accordance with the terms of the trust and applicable

law.

210.    Defendants breached their fiduciary duties by engaging in the

wrongful acts described herein, including but not limited to:

a.  Creating and forging Plaintiff's signature on a release dated

September 23, 2009, purporting to discharge any claims against

the Trust Fund and its trustees, and to acknowledge receipt of

$30,000, which Plaintiff did not receive in full. b. Transferring

$1,500,000 from The Grove at the Lake Realty LLC to Sheridan

Healthcare Associates, an entity controlled by Defendants,

without Plaintiff's knowledge or consent.

b.  Assigning a $1,000,000 note from Defendant Eric Rother and

Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi,

without proper authority or disclosure to Plaintiff.

c.  Obstructing Plaintiff's access to accurate records and accounts

related to the Trust Fund and misrepresenting the status and

disposition of Trust Fund assets.

d.  Creating multiple subsequent fraudulent trusts and introducing

new trustees to obfuscate the original Trust Fund and its assets.

51

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

e.  f. Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

f.  Failing to act in the best interest of Plaintiff by converting Trust Fund assets for their own benefit and for the benefit of others at Plaintiff's expense.

211.    Defendants' actions in breaching their fiduciary duties were intentional and aimed at depriving Plaintiff of his rightful inheritance and benefits from the Trust Fund.

212.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address the Defendants' actions.

213.    Plaintiff is entitled to recover damages for the losses incurred due to Defendants' breach of fiduciary duty, including actual damages, punitive damages, reasonable attorney fees and costs, prejudgment interest, and any such other relief as deemed equitable and just.

### ix.  CONSTRUCTIVE TRUST

214.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

215.    Defendants, through their wrongful actions as detailed herein, have unjustly obtained and retained assets that rightfully belong to the Plaintiff as a beneficiary of the Trust Fund.

216.    Defendants have fraudulently misappropriated Trust Fund assets through various means, including but not limited to, the creation of forged documents, unauthorized transfers, and concealment of material facts regarding the Trust Fund's administration.

217.    Specifically, Defendants have:

    a.    Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

    b.    Transferred $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

    c.    Assigned a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

    d.  Obstructed Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresented the status and disposition of Trust Fund assets.

    e.  Created multiple subsequent fraudulent trusts and introduced new trustees to obfuscate the original Trust Fund and its assets.

218.    Defendants' actions in misappropriating the Trust Fund assets were intentional and designed to deprive Plaintiff of his rightful inheritance and benefits from the Trust Fund.

219.    Equity and good conscience require that Defendants should not be allowed to retain the benefits obtained through their wrongful conduct.

220.    Plaintiff seeks the imposition of a constructive trust over all assets wrongfully obtained and retained by Defendants, including but not limited to, the funds transferred from The Grove at the Lake Realty LLC, the $1,000,000 note, and any other assets derived from the misappropriated Trust Fund.

221.    Imposing a constructive trust will ensure that the assets wrongfully obtained by Defendants are returned to their rightful owner, the Plaintiff, and will prevent Defendants from being unjustly enriched at Plaintiff's expense.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

## x.  CLAIM & DELIVERY

222.     Plaintiff, as a beneficiary of the Trust Fund, has a right to

possess the assets and benefits of the Trust Fund as specified in the

terms of the trust agreement.

223.     Defendants, individually and collectively, have wrongfully taken

and detained specific assets of the Trust Fund without Plaintiff's

consent and in a manner inconsistent with Plaintiff's rights as a

beneficiary.

224.     Specifically, Defendants have wrongfully taken and detained

Trust Fund assets through various fraudulent means, including but not

limited to:

a.  Creating and forging Plaintiff's signature on a release dated

September 23, 2009, purporting to discharge any claims against

the Trust Fund and its trustees, and to acknowledge receipt of

$30,000, which Plaintiff did not receive in full.

b.  Transferred $1,500,000 from The Grove at the Lake Realty LLC

to Sheridan Healthcare Associates, an entity controlled by

Defendants, without Plaintiff's knowledge or consent.

c.  Assigned a $1,000,000 note from Defendant Eric Rother and

Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi,

without proper authority or disclosure to Plaintiff.

55

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

    d.  Obstructed Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresented the status and disposition of Trust Fund assets.

    e.  Created multiple subsequent fraudulent trusts and introduced new trustees to obfuscate the original Trust Fund and its assets.

225.    Defendants' actions in wrongfully taking and detaining the Trust Fund assets were intentional and aimed at depriving Plaintiff of his rightful inheritance and benefits from the Trust Fund.

226.    Plaintiff has demanded the return of the specific assets wrongfully taken and detained by Defendants, but Defendants have failed and refused to return such assets to Plaintiff.

227.    As a direct and proximate result of Defendants' wrongful taking and detention of Trust Fund assets, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address Defendants' actions.

228.    Plaintiff is entitled to the immediate return of the specific assets wrongfully taken and detained by Defendants, as well as any damages resulting from the wrongful detention of such assets.

229.    Plaintiff is entitled to damages for the period in which the specific property was wrongfully detained.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

### xi.  UNJUST ENRICHMENT

230.     Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

231.     Defendants, through their wrongful actions as detailed herein, have been unjustly enriched at the expense of the Plaintiff.

232.     Defendants have received and retained benefits, including but not limited to Trust Fund assets, through various wrongful means such as fraudulent misrepresentation, conversion, and breach of fiduciary duty.

233.     Specifically, Defendants have:

   a. Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

   b. Transferred $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

   c. Assigned a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

d.  Obstructed Plaintiff's access to accurate records and accounts

related to the Trust Fund and misrepresented the status and

disposition of Trust Fund assets.

e.  Created multiple subsequent fraudulent trusts and introduced

new trustees to obfuscate the original Trust Fund and its assets.

234.    As a result of Defendants' wrongful actions, Plaintiff has been

deprived of the benefits and assets that rightfully belong to him as a

beneficiary of the Trust Fund.

235.    Defendants' retention of these benefits is unjust and inequitable,

and Defendants should be required to disgorge all benefits obtained at

Plaintiff's expense.

236.    Plaintiff is entitled to restitution of all benefits wrongfully

obtained and retained by Defendants, including but not limited to the

Trust Fund assets and any profits derived therefrom.

### xii.  DECLARATORY RELIEF

237.    Plaintiff incorporates by reference each preceding paragraph of

this Complaint as though fully set forth herein.

238.    An actual controversy has arisen and now exists between

Plaintiff and Defendants concerning their respective rights and duties

with respect to the Trust Fund and the assets contained therein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

239.    Plaintiff contends that:

    a.  He is the rightful beneficiary of the Trust Fund and is entitled to the assets and benefits thereof.

    b.  The release dated September 23, 2009, purportedly signed by Plaintiff, is forged and invalid.

    c.  All transfers and assignments of Trust Fund assets made without proper authority and disclosure are void.

    d.  d. Defendants have engaged in wrongful acts including fraudulent misrepresentation, conversion, and breach of fiduciary duty, which invalidate any actions taken by them to deprive Plaintiff of his rightful inheritance.

240.    Defendants dispute these contentions and assert that the release is valid and that their actions concerning the Trust Fund assets were proper and lawful.

241.    Plaintiff seeks a judicial declaration of his rights with respect to the Trust Fund and the invalidity of the release and other wrongful actions taken by Defendants.

242.    Declaratory relief is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties, and to prevent further harm to Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

### xiii.    NEGLIGENCE

243.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

244.    Defendants, particularly those in trustee positions, owed Plaintiff a duty of care to manage and administer the Trust Fund in a prudent and lawful manner.

245.    Defendants breached their duty of care by failing to properly manage and administer the Trust Fund, including but not limited to:

   a.   Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full. b. Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

   b.   Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

    c.  Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

    d.  Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

    e.  Failing to act with the care, diligence, and prudence required of a fiduciary in managing and protecting the Trust Fund assets.

246.    Defendants' negligent actions and omissions directly and proximately caused Plaintiff to suffer significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address the Defendants' actions.

247.    Plaintiff is entitled to recover damages for the losses incurred due to Defendants' negligence, including actual damages, reasonable attorney fees and costs, prejudgment interest, and any such other relief as deemed equitable and just.

### xiv.  CIVIL CONSPIRACY

248.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

249.    Defendants, individually and collectively, entered into an agreement and conspired to commit wrongful acts designed to defraud Plaintiff and deprive him of his rightful inheritance and benefits from the Trust Fund.

250.    The purpose of the conspiracy was to unlawfully withhold, misappropriate, and convert the assets of the Trust Fund for the benefit of Defendants and others, and to deprive Plaintiff of his legal rights as a beneficiary.

251.    In furtherance of this conspiracy, Defendants committed numerous overt acts, including but not limited to:

   a. Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full. b. Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

   b. Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

  c. Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

  d. Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

  e. Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

252. Defendants acted with the specific intent to defraud Plaintiff and to prevent him from discovering the true nature of the Trust Fund's administration and the wrongful acts committed by Defendants.

253. Defendants' conspiracy to defraud was willful, malicious, and conducted with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages.

254. As a direct and proximate result of Defendants' conspiracy to defraud, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address the Defendants' actions.

### xv. <u>TORTIOUS INTERFERENCE WITH INHERITANCE</u>

255. Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

256.    Plaintiff, as a beneficiary of the Trust Fund, had a reasonable expectation of receiving his inheritance from the Trust Fund.

257.    Defendants knew or should have known of Plaintiff's expectation of receiving his inheritance from the Trust Fund.

258.    Defendants, individually and collectively, intentionally and wrongfully interfered with Plaintiff's expected inheritance by engaging in fraudulent and deceitful conduct, including but not limited to:

    a.  Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full. b. Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

    b.  Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

    c.  Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

    d. Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

    e. Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

259.    Defendants' intentional and wrongful actions were designed to and continue to, in fact, prevent Plaintiff from receiving his rightful inheritance from the Trust Fund.

260.    As a direct and proximate result of Defendants' tortious interference with Plaintiff's inheritance, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address Defendants' actions.

261.    Plaintiff is entitled to recover damages for the losses incurred due to Defendants' tortious interference with his inheritance, including actual damages, punitive damages, reasonable attorney fees and costs, prejudgment interest, and any such other relief as deemed equitable and just.

### xvi.  CONSTRUCTIVE FRAUD

262.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

263.    Defendants, particularly those in trustee positions, owed

Plaintiff a duty, as a beneficiary of the Trust Fund, to responsibly

manage the Trust Fund and to avoid the improper use of and

conversion of Trust Fund assets..

264.    Defendants, by virtue of their positions of trust and confidence,

had a duty to act in good faith and with due regard to the interests of

Plaintiff.

265.    Defendants breached their fiduciary duty by engaging in acts

and omissions that constituted constructive fraud, including but not

limited to:

a.  Creating and forging Plaintiff's signature on a release dated

September 23, 2009, purporting to discharge any claims against

the Trust Fund and its trustees, and to acknowledge receipt of

$30,000, which Plaintiff did not receive in full. b. Transferring

$1,500,000 from The Grove at the Lake Realty LLC to Sheridan

Healthcare Associates, an entity controlled by Defendants,

without Plaintiff's knowledge or consent.

b.  Assigning a $1,000,000 note from Defendant Eric Rother and

Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi,

without proper authority or disclosure to Plaintiff.

66

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

   c.  Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

   d.  Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

   e.  Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

266.  Defendants' actions were undertaken with the intent to deceive Plaintiff and to benefit themselves and others at the expense of Plaintiff.

267.  Defendants' actions constituted constructive fraud as they breached their fiduciary and/or other duties to Plaintiff and took advantage of their positions of trust to mislead and deceive Plaintiff.

268.  Defendants gained an advantage of diverting assets from Trust Fund in an effort to benefit Defendants or others, at the expense of Plaintiff, the beneficiary.

269.  As a direct and proximate result of Defendants' constructive fraud, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address Defendants' actions.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

270.    Plaintiff is entitled to recover damages for the losses incurred due to Defendants' constructive fraud, including actual damages, punitive damages, reasonable attorney fees and costs, prejudgment interest, and any such other relief as deemed equitable and just.

### xvii.  BREACH OF CONTRACT

271.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

272.    Plaintiff, as a beneficiary of the Trust Fund established by his grandfather Jonas Neufeld, had a contractual right to the assets and benefits of the Trust Fund as specified in the terms of the trust agreement.

273.    Defendants, particularly those in trustee positions, had a contractual obligation to manage and administer the Trust Fund in accordance with the terms of the trust agreement and applicable law.

274.    Defendants breached their contractual obligations by engaging in acts and omissions that violated the terms of the trust agreement, including but not limited to:

a.  Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

b. Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

c. Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

d. Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

e. Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

f. Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

275.    Defendants' actions were undertaken with the intent to deceive Plaintiff and to benefit themselves and others at the expense of Plaintiff, thereby violating the terms of the trust agreement.

276.    As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered significant damages, including the loss

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

of Trust Fund assets, loss of income from those assets, and additional
expenses incurred to investigate and address Defendants' actions.

277.    Plaintiff is entitled to recover damages for the losses incurred
due to Defendants' breach of contract, including actual damages,
punitive damages, reasonable attorney fees and costs, prejudgment
interest, and any such other relief as deemed equitable and just.

### xviii.  EQUITABLE ESTOPPEL

278.    Plaintiff incorporates by reference each preceding paragraph of
this Complaint as though fully set forth herein.

279.    Defendants, through their actions and representations, led
Plaintiff to believe that the Trust Fund was being administered
properly and that he had no further claims or entitlements to its
assets.

280.    Specifically, Defendants misrepresented and concealed material
facts, including but not limited to:

    a.  Creating and forging Plaintiff's signature on a release dated
        September 23, 2009, purporting to discharge any claims against
        the Trust Fund and its trustees, and to acknowledge receipt of
        $30,000, which Plaintiff did not receive in full.

70

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

b. Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

c. Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

d. Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

e. Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

f. Falsely representing that Plaintiff had signed various releases relinquishing his rights to the Trust Fund assets.

281.    Plaintiff, relying on these representations and omissions, refrained from taking timely legal action to assert his rights and to challenge the wrongful administration of the Trust Fund.

282.    Defendants knew or should have known that their representations and omissions would induce Plaintiff to rely on them and refrain from asserting his legal rights until Plaintiff discovered the injuries and/or pattern of activity as set forth herein.

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

283.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant damages, including the loss of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address Defendants' actions.

284.    Defendants should be equitably estopped from asserting any defenses or claims based on the purported release or any other actions taken in furtherance of their wrongful conduct.

### xix.  MONEY HAD & RECEIVED

285.    Plaintiff incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

286.    Defendants, individually and collectively, have received and retained money and assets that rightfully belong to Plaintiff as a beneficiary of the Trust Fund.

287.    Specifically, Defendants have wrongfully obtained and retained Trust Fund assets through various fraudulent means, including but not limited to:

    a.    Creating and forging Plaintiff's signature on a release dated September 23, 2009, purporting to discharge any claims against the Trust Fund and its trustees, and to acknowledge receipt of $30,000, which Plaintiff did not receive in full.

72

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

b.  Transferring $1,500,000 from The Grove at the Lake Realty LLC to Sheridan Healthcare Associates, an entity controlled by Defendants, without Plaintiff's knowledge or consent.

c.  Assigning a $1,000,000 note from Defendant Eric Rother and Gale Rothner to Hannah Finn, Pessa Finn, and/or Illana Eddi, without proper authority or disclosure to Plaintiff.

d.  Obstructing Plaintiff's access to accurate records and accounts related to the Trust Fund and misrepresenting the status and disposition of Trust Fund assets.

e.  Creating multiple subsequent fraudulent trusts and introducing new trustees to obfuscate the original Trust Fund and its assets.

288.  Defendants have been unjustly enriched by the receipt and retention of these monies and assets, which in equity and good conscience should be returned to Plaintiff.

289.  Plaintiff has made demands for the return of the monies and assets wrongfully obtained by Defendants, but Defendants have failed and refused to return such monies and assets to Plaintiff.

290.  It is inequitable and unjust for the Defendants to retain the benefits of these monies.

291.  As a direct and proximate result of Defendants' wrongful actions, Plaintiff has suffered significant damages, including the loss

Doc ID: df659af0425d9cea6fc86941861d8392768753d1

of Trust Fund assets, loss of income from those assets, and additional expenses incurred to investigate and address Defendants' actions.

## IX.    REQUEST FOR RELEIF

WHEREFORE Plaintiff RAYMOND E. BUTLER, II respectfully requests that this Honorable Court award actual and treble damages, including all specific assets wrongfully taken and/or detained, reasonable attorney fees and costs, prejudgment interest, and exemplary damages, along with any such other relief that is deemed equitable and just.

## X.    VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on _____09 / 20 / 2024_____.

X _____
Raymond E. Butler, II

74

Respectfully Submitted,

THE MICHIGAN LAW FIRM, PC

/s/ RACINE M. MILLER
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.237.3690
racine@themichiganlawfirm.com

Dated: September 20, 2024

## JURY DEMAND

Plaintiff Raymond E. Butler, II hereby demands a trial by jury of all

issues so triable under Fed R. Civ. P. 38.

Respectfully Submitted,

THE MICHIGAN LAW FIRM, PC

/s/ RACINE M. MILLER
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
Phone: 844.464.3476
Fax: 248.237.3690
racine@themichiganlawfirm.com

Dated: September 20, 2024

Doc ID: df659af0425d9cea6fc86941861d8392768753d1